UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
*******************************
Khia Hollyer,                  *
         Plaintiff             *
                               *        Docket No: *New Complaint*
    v.                         *
                               *        **Jury Trial Requested**
Dartmouth College,             *
         Defendant             *
                               *
*******************************
```

# COMPLAINT

## I.  PARTIES

1. The plaintiff, Khia Hollyer, is a citizen of Canada, and resides at 2116 Parkside Lane, North Vancouver, B.C. V7G 1X5.

2. The defendant, Dartmouth College, is an institution of higher learning incorporated in New Hampshire, with a principal place of business at 6111 McKenzie Hall, 6 Vox Lane, Hanover, NH 03755.

## II.  JURISDICTION & VENUE

3. The plaintiff is a resident of Canada, and the defendant is a New Hampshire corporation. The amount in controversy exceeds $75,000. This Court therefore has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

4. Venue is proper in the District of New Hampshire because it is the judicial district where the defendant has its principal place of business, and the judicial district where the injuries complained of herein occurred.

### III. FACTUAL BACKGROUND

5. On June 13 and 16 of 2017, plaintiff, Khia Hollyer, was cleared both physically and medically to participate in Dartmouth College's Field Hockey Program after she had been involved in a car accident in December of 2016 which resulted in shoulder, neck and back injuries.

6. The plaintiff arrived on Dartmouth College's Campus on August 16, 2017 for the Field Hockey program.

7. On August 19, 2017, the plaintiff's trainer, Meredith Cockerelle, was given a letter written on her behalf by her local physiotherapist, Nico Berg, stating Ms. Hollyer had been attending physiotherapy for rehabilitation following the car-related injury described above.

8. The letter stated that the plaintiff would be able to complete field hockey training without difficulty, with the caveat that "however any cross training that involves overhead movements or heavy upper body loading has created flare ups and issues …. As a result, I suggest limiting any heavy or overhead strength and conditioning for the next **4 months**".

9. On the same day of August 19, 2017, the plaintiff's mother had also met with the Field Hockey and Football Strength and conditioning coach, Mark Kulbis, to inform him of Ms. Hollyer's whiplash and the letter from Nico Berg.

10. Prior to the plaintiff's arrival at Dartmouth, Ms. Hollyer had no weight training experience. After arriving at Dartmouth, Ms. Hollyer's only weight-lifting experience was a goblet squat with 35 pounds a week prior to the date of injury.

11. On September 19, 2017, there was a Team Lift Session in the Floren Varsity Gym at Dartmouth.

12. During the lift session, Ms. Hollyer was pulled aside separately and instructed by Mark Kulbis, who was acting as an agent of the defendant, to participate in a trap bar deadlift exercise.

13. Mark Kulbis showed the plaintiff the use of a trap bar (also referred to as a hex bar). However, he provided minimal verbal instruction and only a quick physical demonstration of a trap bar deadlift exercise.

14. A trap bar, named after the upper fibers of the trapezius muscles, is used in weight training. It is comprised of a group of bars which are bent and welded into a hexagonal or diamond shape sized so a person may stand in the middle.

15. A trap bar deadlift exercise is completed by an individual first standing in the center of the trap bar with an individual's feet hip-width apart. Bending the knees, one would then reach down and grab the handles on either side of the trap bar. From this position, one would typically sit their hips back, so the tension is in the hamstrings. One is then to stick their chest up, flatten their back, tuck in their chin, and look up/forward. While breathing in and tightening one's core, they would then stand up by straightening the hips and then the knees. While keeping the core tight and back flat, one would then tighten their glutes at the top of the rep. Lastly, the trap bar is to be controllably lowered back down to the ground.

16. It is often noted that individuals learning any new exercise should start with a lower weight and gradually increase that weight as they progress. This is commonly done to be sure the person has mastered the correct form for the exercise (which is essential to prevent injury), and are comfortable and capable of lifting the weight using the correct form at each new weight increment.

17. The correct form for a trap bar dead lift should help prevent one from rounding their back which could create stress and risk of injury to an individual's spine.

18. The trap bar is a specialized piece of equipment that does not provide perfect form or protection if the individual does not correctly learn the appropriate methodology from an experienced and competent trainer. This is another reason that starting with lower weight is vital.

19. Floren Varsity Gym, and all the equipment used in that facility, including the trap/hex bar, were owned and maintained by the defendant.

20. Mark Kulbis joined the Dartmouth College Strength and Conditioning Staff in January 2016. Kulbis assumed the position of Associate Director of Strength and Conditioning in March 2018. Beforehand Kulbis served as an Assistant Strength and Conditioning Coach and a paid intern at Dartmouth College.

21. At the beginning of the directed exercise, Mr. Kulbis did not start with any graduated weight progression. Rather, Mr. Kulbis started the plaintiff with 105 pounds on the hex bar. Ms. Hollyer weighed only 125 pounds, meaning Mr. Kulbis had started her lifting program with 84% of her body weight – an amount that was clearly excessive for a first-time lifter who had not demonstrated knowledge and mastery of the correct lifting form.

22. Ms. Hollyer, who did not have experience with weight-lifting, was unaware of the amount of weight that was on the bar prior to lifting.

23. The plaintiff was also not aware of the risk of further injury to which she was subject. Mr. Kulbis casual approach and failure to warn her of potential risks, or give her the opportunity to learn the correct form at a lower weight, created a false sense of security.

24. During the first attempted repetition with the heavily-weighted hex bar, Ms. Hollyer successfully lifted the weight to full height. However, upon lowering the weight, Mr. Kulbis told her to squat lower while still holding the weight. As a result of this instruction, the plaintiff experienced an incredibly painful wrenching feeling in her back causing her to drop the weight.

25. Mr. Kulbis did not render medical aid or encourage Ms. Hollyer to seek medical attention. He acted as if nothing was wrong. Mr. Kulbis then instructed Ms. Hollyer to stop lifting the hex bar and told her to do another exercise in a V-sit position passing a medicine ball back and forth as hard as she could.

26. This exercise required Ms. Hollyer to sit on her tailbone which may have exacerbated her back injury. It was certainly not an appropriate exercise for someone who had just reported low back pain while lifting 84% of her body weight.

27. The letter received on the August 19, 2017 had also stated that no heavy upper body loading, heavy or overhead lifting and conditioning should happen for 4 months.

28. September 20, 2017, plaintiff informed her Athletic trainer, Meredith Cockerelle, of her back injuries and was then told by Ms. Cockerelle to go to practice to test out how she was feeling.

29. As the plaintiff was following instruction, she went to practice which resulted further pain during the first drill.

30. Ms. Cockerelle came to assist plaintiff on the field, after which she made Ms. Hollyer go on the exercise bike as she thought it would be fine and it was just a tight piriformis.

31. The following day, plaintiff had gone back to practice along with seeing Ms. Cockerelle. Ms. Cockerelle continued to have plaintiff take part in exercises and practices even though plaintiff complained of ongoing pain.

32. There was no mention of seeing doctors despite there being doctors on staff with the athletic department.

33. The plaintiff had taken her own initiative to be seen by doctors since she was not being guided to do so by the training/medical staff of the defendant.

34. The plaintiff was diagnosed with a ruptured disc at L5/S1 of her spine. In addition to pain and weakness, the plaintiff has experienced fecal and urinary incontinence as symptoms of the serious damage done to her spine by the negligently-guided weight exercise she was instructed to perform with excessive weight.

35. The Plaintiff has been instructed by her medical professionals that she is not permitted to perform any weight room exercises and must avoid aggravating activities that include lumbar spine flexion, rotation and compression (lifting and sitting).

36. The plaintiff currently suffers from continued pain and other symptoms resulting from the defendant's negligence. With the risk of further injury, it is unlikely she will be able to play field hockey or other sports of a contact nature in the future.

37. Under New Hampshire law a defendant may be held liable when a reasonable person in the defendant's position would customarily instruct a plaintiff as to the dangers inherent in an activity. Dartmouth College's coaches should have warned and instructed the plaintiff as to the dangers presented when lifting heavy weights, the proper method for using the hex-bar, the need to start with low weight until mastery of lifting form was achieved, and the

need to gradually increase weight before attempting to lift a significant portion of the plaintiff's own body weight without prior experience.

38.     Enhancing the risks of a sports activity in ways that are unusual, unexpected, and outside the ordinary range of risk to be expected in such a sport may subject a defendant to liability.  Creating an enhanced and unreasonable risk by starting the plaintiff with a clearly excessive amount of weight, before allowing her to master form and technique at a lower weight, while using an unfamiliar piece of equipment, constituted a breach of the applicable standard of care, particularly in the absence of offsetting safeguards to protect against the enhanced risk.

39.     To the extent that the coaching staff of Dartmouth College did not recognize the dangers of allowing a new athlete, who was unfamiliar with weight-lifting in general, and with the hex-bar specifically, to attempt to lift 84% of her body weight on her first attempt, before demonstrating mastery of form and technique at a lower weight, those coaches were clearly negligently selected and lacked adequate supervision.

40.     The plaintiff's grievous injuries would likely not have occurred had she been properly instructed in the technique for using a hex-bar, had been required to demonstrate mastery of form and technique at a lower weight, and had been required to demonstrate continued mastery of form and technique at gradually increased weight, prior to requiring her to attempt to control 84% of her body weight on her first-ever attempt at lifting with a hex-bar.

41.     Dartmouth College had a duty to select coaches that were aware of these dangers, and the coaches had a duty to properly warn, instruct, and monitor Hollyer in the appropriate weight-lifting techniques.  Dartmouth College's breaches of these duties greatly enhanced the inherent dangers of lifting weights and were the direct and proximate cause of Hollyer's injuries.

42. The defendant's agents further breached their duty of care to the plaintiff by failing to recognize the possibility that she had suffered a serious back injury and have her medically-cleared before further exerting herself.  The defendant failed to select and train its coaches to be aware of the warning signs of a serious back injury, and the appropriate step to take when an athlete reported sudden serious back pain from weight-lifting.  The coaching staff's failure to have the plaintiff immediately examined by a physician, despite prior written communication that the plaintiff had a previous back injury and weight-lifting restrictions, constitutes gross negligence.

## COUNT I- NEGLIGENCE-IMPROPER USE AND MAINTENANCE OF EQUIPMENT AND FACILITIES

43. The allegations of paragraphs 1-42 are incorporated herein by reference.

44. The defendant, by its agents, servants and employees, owed a duty to the plaintiff to use reasonable care to become familiar with the proper use and care of the plaintiff's prior physical conditions so that she could have effectively performed the intended function of the strength and conditioning equipment such as the hex bar.

45. The defendant also owed a duty to the plaintiff to provide care and instruction that would adequately adjust the services and exercises to her specific need and level of strength and ability.

46. The defendant breached those duties by dismissing the given doctor's note which informed them of the plaintiff's physical capabilities.

47. The defendant also breached those duties by failing to ensure the plaintiff was comfortable with her form as well as with the weight on the hex bar prior to lifting it and adding heavier weight as needed.

48. The defendant otherwise failed to use due care with the plaintiff's past and present injuries as she was not advised to see doctors.

49. The defendant, through its agents, significantly enhanced the inherent risks of weight-lifting exercises by failing to account for the plaintiff's lack of experience, her prior injuries, and by failing to provide appropriate instruction with lighter weights before requiring the plaintiff to lift 4/5 of her body weight on her first attempt.

### COUNT II- NEGLIGENCE-FAILURE TO WARN AND INSTRUCT

50. The allegations of paragraphs 1-49 are incorporated herein by reference.

51. The defendant, by its agents, servants, and employees, owed a duty to the plaintiff to use reasonable care to warn her of the risks of heavy lifting, strength, and conditioning in reference to her past injuries, including the risk that, due to the weight on the hex bar, there may be stress put on her back and spine from the heavier lifting.

52. The defendant also owed a duty to the plaintiff to instruct her in the proper way to complete a trap bar deadlift exercise, so as to use light weights to maximize the prevention of further injuries.

### COUNT III-NEGLIGENCE-FAILURE TO SUPERVISE

53. The allegations of paragraphs 1-52 are incorporated herein by reference.

54. The defendant, by its agents, servants, and employees, owed a duty to the plaintiff to use reasonable care to observe, monitor and supervise her while she was lifting and exercising, to ensure that her form and amount of strength was appropriately utilized for maximum protection to herself, and that she did not exceed her limitations set by her doctor, and, in the event that she did, to warn and instruct her on how to properly recover.

55. The defendant breached those duties and, even though the coach and trainer were aware or should have been aware of her prior injuries, never warned her of that fact or instructed her how to properly perform in exercises and practices without creating further injuries.

56. The defendant also breached those duties by failing to ensure the plaintiff was receiving care and watch after she informed them of her occurring injuries as she partook in instructed activities and exercises by the agents of the defendant.

## COUNT IV-NEGLIGENT HIRING, TRAINING AND SUPERVISION

57. The allegations of paragraphs 1-56 are incorporated herein by reference.

58. The defendant had a duty to select coaches who were knowledgeable about the risks of the activities they were coaching on the defendant's behalf, and who were willing and able to mitigate those risks to the best degree possible, while not allowing their players to be exposed to unexpected or enhanced risks not ordinarily encountered in those activities.

59. In this case, the defendant selected coaches that were clearly unaware of the risks and/or unwilling to mitigate the risks of training the plaintiff on a new weight-lifting exercise that she had no prior experience with. Instead, those coaches ignored documentation regarding prior physical injuries the plaintiff had sustained, and required her to lift a grossly excessive amount of weight on her first lift, before ensuring that she could show proper understanding and mastery of the technique with a lower, safer amount of weight. Once the plaintiff informed them she was injured as a result of their negligent instruction and supervision, the coaches compounded their injurious errors by having the plaintiff continue to engage in strenuous activities, rather than having her seen by an on-staff medical professional or independent doctor.

60. As a direct and proximate result of the defendant's failure to properly select and/or train its coaching staff, the plaintiff was exposed to unexpected, enhanced risks beyond

those ordinarily encountered in the activity of weight-lifting, and was seriously injured. The enhanced risk of injury created by requiring an athlete with prior back injuries to start a new, unfamiliar exercise at a clearly excessive weight (more than 4/5 of her body weight), should have been foreseeable to an experienced and properly trained coach, as should the risk of exacerbating her injury after she reported feeling back pain from the first exercise, by requiring her to engage in other strenuous activities.

61. The the plaintiff suffered and continues to suffer from physical pain, weakness, limited mobility, incontinence, emotional distress, and lack of enjoyment of life as a result of the defendant's negligent selection, training, and supervision of its coaching staff. In addition, the plaintiff has incurred and will continue to incur significant medical bills and may need surgical intervention in the future to the correct the serious damage to her spine.

## DAMAGES

62. The allegations of paragraphs 1-61 are incorporated herein by reference.

63. As a result of the defendant's breaches, as alleged herein, the plaintiff has suffered and will continue to suffer from the physical and emotional injuries alleged, some of which are permanent in nature, as well as associated financial losses, including medical bills and future medical care/expenses, travel expenses, educational expenses, loss of income and future earnings, loss of earning potential, and lifelong regret, disappointment, sadness, and loss of enjoyment of life because of her inability to pursue a field hockey career, or even to play field hockey recreationally, or pursue other recreational, social, and professional opportunities.

64. The plaintiff seeks damages for those losses, in the full amount allowed by the laws of the State of New Hampshire, including interest and costs.

WHEREFORE, the plaintiff respectfully requests that the Honorable Court:

A. Schedule this matter for trial by jury;

B. Enter judgment in the amount awarded by the jury after trial;

C. Award the plaintiff her reasonable litigation costs; and

D. Grant such other and further relief as the Court deems just and equitable.

    Respectfully submitted,

    Khia Hollyer,

    By her attorneys,

    WARD LAW GROUP, PLLC

Dated: September 14, 2020    By:    /s/ John Ward Esq.
    John Ward (19843)
    28 Webster Street
    Manchester, NH 03104
    O: (603) 232-5220
    F: (603) 232-5230
    jward@wardlawnh.com

    &

    BACKUS, MEYER
    & BRANCH, LLP

    By:    /s/ Jason R.L. Major Esq.
    Jason R.L. Major (14782)
    116 Lowell Street
    Manchester, NH 03104
    (603) 668-7272
    JMajor@backusmeyer.com