UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Khia Hollyer

    v.                            Civil No. 20-cv-954-SE
                                         Opinion No. 2022 DNH 096

Trustees of Dartmouth College

O R D E R

Khia Hollyer brings suit against the Trustees of Dartmouth College ("Dartmouth"), asserting negligence claims arising out of injuries she allegedly suffered while weight training in Dartmouth's facilities and under the supervision of Dartmouth employees. Dartmouth filed two motions in limine seeking to preclude some or all of the testimony of Hollyer's experts. The first seeks to limit the testimony of Dr. Douglas Goumas. Doc. no. 17. The second seeks to preclude the testimony of Thomas LeBrun in its entirety. Doc. no. 18. Hollyer objects to both motions.

Background

Hollyer was in a car accident in December 2016, after which she suffered shoulder, neck, and back pain. She received treatment for her injuries from her physiotherapist, Nico Berg, and by June 2017 she was physically cleared to participate in Dartmouth's Field Hockey Program ("Program") that summer. Berg

wrote a letter stating that Hollyer could participate in the Program but suggested "limiting any heavy or overhead strength and conditioning for the next 4 months." Doc. no. 1, ¶ 8.

Hollyer arrived on Dartmouth's campus for the Program on August 16, 2017. A few days later, Hollyer, her mother, or both gave a copy of Berg's letter to Meredith Cockerelle, Dartmouth's Athletic Trainer, and relayed the contents of the letter to Mark Kulbis, Dartmouth's Strength and Conditioning Coach for Field Hockey and Football.

In September 2017, Kulbis directed Hollyer to perform a "trap bar deadlift exercise" during a Program workout.[1] Hollyer alleges that Kulbis provided her with minimal instruction and told her to lift an excessive amount of weight (84% of her bodyweight), despite Berg's letter and her limited weight-lifting experience.

Hollyer injured her back during the exercise. Over the following days, Cockerelle led Hollyer in other exercises and practices despite Hollyer's complaints of pain.

Hollyer sought medical treatment and was diagnosed with an L5-S1 disc herniation. She alleges that she has suffered and continues to suffer from various symptoms because of her injury,

---

[1] The parties also refer to this exercise as a "hex bar deadlift."

including right leg weakness, diminished reflexes, and urinary incontinence. She brings this action alleging several negligence claims against Dartmouth and seeking to recover damages for her injuries.

## Discussion

Hollyer designated two expert witnesses—Dr. Goumas and LeBrun—both of whom authored expert reports. In her expert disclosure, Hollyer stated that Dr. Goumas "will testify regarding the treatment provided to Ms. Hollyer, along with the cost of such care, future medical treatment, and any long-term pain or discomfort the Plaintiff may have as a result of this accident." Doc. no. 17-1 at 1. With regard to LeBrun, Hollyer stated that he "will testify regarding his expert knowledge of weightlift training and the mechanics of the strengthening exercise that caused the injury to Ms. Hollyer and how it relates to the same." Id. at 2. Dartmouth challenges the admissibility of some or all of Dr. Goumas's and LeBrun's opinions on the grounds that they are irrelevant, unreliable, or not helpful to the jury.

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). "As the Supreme

Court of the United States explained in Daubert v. Merrell Dow
Pharmaceuticals, Inc., Federal Rule of Evidence 702 assigns a
'gatekeeping role for the judge' to 'ensur[e] that an expert's
testimony both rests on a reliable foundation and is relevant to
the task at hand.'" Lopez-Ramirez v. Toledo-Gonzalez, 32 F.4th
87, 94 (1st Cir. 2022) (quoting Daubert, 509 U.S. 579, 597
(1993)).

The party seeking to introduce expert testimony bears the
burden of proving its admissibility. Daubert, 509 U.S. at 592.
The burden is not especially onerous, however, because "Rule 702
has been interpreted liberally in favor of the admission of
expert testimony." Levin v. Dalva Bros., Inc., 459 F.3d 68, 78
(1st Cir. 2006). Thus, when determining whether expert testimony
satisfies the relevant foundational requirements, a court must
be mindful of the "important difference . . . between what is
unreliable support and what a trier of fact may conclude is
insufficient support for an expert's conclusion." Martinez v.
United States, 33 F.4th 20, 24 (1st Cir. 2022) (quotation
omitted). "That the factual underpinning of an expert's opinion
is weak is a matter affecting the weight and credibility of the
testimony — a question to be resolved by the jury." Id.
(quotation omitted).

I.   <u>Motion to Preclude Dr. Goumas's Testimony</u>

Dr. Goumas is an orthopedic surgeon who specializes in sports medicine. As mentioned above, he authored an expert report in which he offers opinions regarding the cause and extent of Hollyer's injuries, and the reasonableness of the treatment that she has received and that she may require in the future. Doc. no. 17-1.

Dartmouth challenges four parts of Dr. Goumas's opinion and argues that he should be precluded from offering them at trial. The challenged portions of the opinion are:

1. All of the treatment Hollyer has received has been reasonable, necessary, and causally related to the injury she allegedly suffered when performing a hex bar deadlift.

2. Hollyer's urinary incontinence was caused by the injury she allegedly suffered when performing the hex bar deadlift.

3. Hollyer has a 17% whole person impairment according to the *A.M.A. Guides to the Evaluation of Permanent Impairment, Fifth Edition*.

4. There is a "possibility" that Hollyer will require future fusion surgery if conservative treatment options fail.

<u>Id.</u> at 11-13.

A.  Treatment Related to Deadlift

Dr. Goumas's report is dated June 1, 2020 and is based on Hollyer's treatment records up to April 4, 2019. Dartmouth moves to preclude Dr. Goumas from testifying about any treatment Hollyer received after April 4, 2019. Hollyer responds that she provided Dr. Goumas with subsequent medical records and that he should be allowed to offer his opinion about the reasonableness of that treatment as well.

A party is limited to expert opinions that have been disclosed to the opposing party in a written report. Fed. R. Civ. P. 26(a)(2)(B)(i). Hollyer and Dartmouth did not stipulate to a different form of expert report than that specified in Federal Rule of Civil Procedure 26(a)(2). Doc. no. 11. Unless the parties stipulate to a different form of expert report, that report must include "the facts or data considered by the witness in forming" his or her opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). If there is a material change or addition to the information included in the expert's opinion, a party must supplement the report with that information. Id. (e)(2).

Dr. Goumas's report is based on Hollyer's medical records up to April 4, 2019. To date, Hollyer has not produced a supplemental report to add Dr. Goumas's opinion based on medical records after that date. In the absence of such a report, Dr.

Goumas's opinion is limited to the timeframe of the records reviewed, which is up to April 4, 2019. For that reason, Dartmouth's motion to preclude Dr. Goumas from testifying about the reasonableness and necessity of treatment Hollyer received after April 4, 2019, is granted. Should Hollyer supplement Dr. Goumas's report pursuant to Rule 26(e) prior to the deadline, testimony regarding treatment included in the supplemental report will be allowed.

B.   Cause of Urinary Incontinence

In his expert report, Dr. Goumas states: "The consensus opinion from [Hollyer's] specialists is that . . . Hollyer's ongoing urinary incontinence is as a result of the S1-S2 nerve root injury/impingement that occurred from the herniated disc on 9/9/17." Doc. no. 17-1 at 12. The report later states, "Ms. Hollyer continues to have urinary incontinence as a result of the disc herniation that occurred on 09/19/17." Id.

Dartmouth argues that the court must preclude Dr. Goumas's testimony on the cause of Hollyer's urinary incontinence because his opinion is merely the "regurgitation of purported opinions from other providers . . . ." Doc. no. 17 at 5. Dartmouth contends that Dr. Goumas does not offer any independent basis for his opinion or explain why he believes the providers'

opinion is correct and that, therefore, his opinion is inadmissible.

It is true that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). However, the court cannot conclude at this stage that Dr. Goumas's opinion as to the cause of Hollyer's urinary incontinence is as bereft of foundational support as Dartmouth suggests. Although the report does not specifically provide the basis for Dr. Goumas's opinion about the cause of Hollyer's urinary incontinence, Dr. Goumas states in his report that his opinions are based on his review of Hollyer's medical records. Doc. no. 17-1 at 3. Dartmouth could have deposed Dr. Goumas to explore the basis of his opinions, including his opinion as to the cause of Hollyer's urinary incontinence. It chose not to do so.

At this stage, in light of the liberal interpretation courts have given to Rule 702, the court declines to preclude Dr. Goumas's opinion testimony as to the cause of Hollyer's urinary incontinence. To the extent that Dartmouth seeks to attack the basis for that opinion, it may do so during trial. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof" are the "appropriate means of attacking shaky but admissible" expert testimony.); Martinez, 33 F.4th at 24.


      C.   Whole Person Impairment

In his expert report, Dr. Goumas opines that Hollyer has a permanent impairment as a result of her injury. He bases his opinion on the *AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition* ("AMA Guidelines"). Using the AMA Guidelines to evaluate Hollyer's injury and symptoms, Dr. Goumas opines that Hollyer has a "17% whole person impairment." Doc. no. 17-1 at 12.

Dartmouth argues that this portion of Dr. Goumas's opinion should be precluded because New Hampshire law does not permit a jury to assess a specific percentage of permanent impairment in a personal injury action. Dartmouth contends that, therefore, Dr. Goumas's testimony concerning permanent impairment and any reference to the AMA Guidelines would likely confuse the jury and is not permitted under New Hampshire law.

Contrary to Dartmouth's argument, New Hampshire courts have approved of opinion evidence regarding a percentage of permanent impairment in negligence cases. See, e.g., Bennett v. Lembo, 145

N.H. 276, 278 (2000) (discussing the plaintiff's permanent
impairment in negligence case and noting that the plaintiff's
physician testified as to a 12% permanent impairment while the
defendant's expert testified as to a 9% permanent impairment).
In addition, New Hampshire courts have allowed experts to use
the AMA Guidelines in reaching their opinions regarding
permanent impairment, so long as the expert is qualified to
testify about them and applied them appropriately. See Grenier
v. Enterprise Rent-A-Car of Boston, Inc., No. 03-C-0382, 2006 WL
4469483 (N.H. Super. May 19, 2006) (allowing expert to testify
in negligence action as to the permanency of the plaintiff's
impairment using the AMA Guidelines in light of his
qualifications and familiarity with the Guidelines); cf.
Figlioli v. R.J. Moreau Companies, Inc., 151 N.H. 618, 624
(2005) (remanding personal injury case for a new trial on
damages, in part, because the plaintiff's expert was not
qualified to use the AMA Guidelines to determine the plaintiff's
whole person impairment when the expert stated that he had never
used the AMA Guidelines before the case, that he was "unfamiliar
with terms in the AMA Guidelines, and that he was unfamiliar
with the standards and criteria employed under the AMA
Guidelines to make impairment determinations").

For these reasons, Dartmouth's argument to preclude Dr. Goumas's testimony on Hollyer's whole person impairment is without merit. Therefore, the motion as to that portion of Dr. Goumas's opinion is denied without prejudice. To the extent that Dartmouth intends to challenge Dr. Goumas's familiarity with the AMA Guidelines or his ability to explain adequately the concept of whole person impairment to the jury, those arguments may be raised at trial.

### D.   Possibility of Future Surgery

In his expert report, Dr. Goumas opined that it "is highly likely that . . . Hollyer will require further treatment in the future as a result of her L5-S1 herniated disc . . . . In addition, there is also the possibility that she may require a lumbar fusion in the future if conservative measures fail." Doc. no. 17-1 at 13. Dr. Goumas also opines on the cost of both conservative treatment and lumbar fusion surgery. Id. Dartmouth contends, in cursory fashion, that Dr. Goumas should be precluded from testifying that there is a possibility that Hollyer will need surgery in the future because that opinion is not based on a reasonable degree of medical certainty.

Under New Hampshire law, "there can be no recovery for future damages unless there is evidence from which it can be found to be more probable than not that they will occur."

Stachulski v. Apple New England, LLC, 171 N.H. 158, 168 (2018)
(quotation omitted). Therefore, Hollyer may only recover for the
cost of a lumbar fusion if she proves to the jury that it is
more probable than not that she will require that procedure in
the future.

Dr. Goumas's opinion is relevant to Hollyer's ability to
carry that burden of proof. Although the court agrees with
Dartmouth that Dr. Goumas's opinion would not itself satisfy
Hollyer's burden, that fact does not render the opinion
unreliable such that it must be excluded. Whether Dr. Goumas's
testimony concerning the possibility and cost of a lumbar
procedure may be considered by the jury is a question to be
answered at trial. Therefore, Dartmouth's motion is denied
without prejudice.

E.   Summary

For these reasons, Dartmouth's motion to preclude certain
portions of Dr. Goumas's opinion is granted with respect to the
reasonableness and necessity of treatment Hollyer received after
April 4, 2019, provided that Hollyer does not supplement his
opinion in writing prior to the deadline to do so. The motion is
otherwise denied without prejudice to Dartmouth's ability to
raise the arguments at trial.

II.  <u>Motion to Exclude LeBrun</u>

Hollyer retained LeBrun as an expert in the field of weightlift training. LeBrun authored an expert report that contains his opinion "regarding his expert knowledge of weightlifting training and the mechanics of the strengthening exercise that caused the injury to Ms. Hollyer and how it relates to the same." Doc. no. 18-1 at 2.  LeBrun opines that (1) Dartmouth should not have allowed Hollyer to perform the hex bar deadlift in light of the restrictions in Berg's letter, (2) if Dartmouth did allow her to do the exercise, it should not have let her do it with 84% of her body weight, and (3) Dartmouth failed to provide proper instruction and training during and after the alleged injury.

Dartmouth argues that LeBrun should be precluded from testifying at trial because his opinions are either not supported with reliable facts or data or are speculative and therefore not helpful to the jury. For example, Dartmouth contends that LeBrun does not explain the mechanics of a hex bar deadlift or why it goes against the restriction in Berg's letter and that LeBrun fails to cite any guides or studies saying that a hex bar deadlift using 84% of an individual's bodyweight is

13

unsafe. None of Dartmouth's objections warrants exclusion of LeBrun's opinion.

LeBrun's report states that he is a Certified Personal Trainer and MMA conditioning coach through the National Academy of Sports Medicine, and a Certified Sports Injury Specialist through the National Exercise & Sports Trainers Association. The report also states that LeBrun has 50 years of experience in the field of strength training. His opinion is based on his training and experience, in light of his review of the relevant facts in this case.

Dartmouth's motion does not challenge LeBrun's qualifications. Dartmouth instead appears to argue that the fact that LeBrun bases his expert opinion on his training and experience rather than, for example, relying upon treatises or studies, necessarily undermines the reliability of his opinion. That argument fails. Indeed, personal knowledge and experience are often the bases for reliable expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Warford v. Indus. Power Sys., Inc., 553 F. Supp. 2d 28, 33 (D.N.H. 2008) ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony . . . ." (quotation omitted)). Objections like Dartmouth's, "which question the factual underpinnings of an expert's

14

investigation," as the court finds they do here, "often go to the weight of the proffered testimony, not to its admissibility." Crowe, 506 F.3d at 18.

For these reasons, Dartmouth's motion to preclude LeBrun's testimony is denied.


### Conclusion

For the foregoing reasons, Dartmouth's motion to preclude parts of Dr. Douglas Goumas's testimony (doc. no. 17) is granted in part and denied in part as provided in this order. Dartmouth's motion to preclude Thomas LeBrun's testimony (doc. no. 18) is denied.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

August 10, 2022

cc: Counsel of Record